USDC SCAN INDEX SHEET

















LLS   12/18/98   13:12
3:98-CV-02284   AMERICA ONLINE INC V. PERSAUD
*1*
*CMP.*

1  STEINHART & FALCONER LLP
   ANDREW J. BERMAN (State Bar No. 146200)
2  LISA M. SITKIN (State Bar No. 194127)
   333 Market Street, 32nd Floor
3  San Francisco, California 94105-2150
   Telephone: (415) 777-3999
4
   Attorneys for Plaintiff
5  AMERICA ONLINE INCORPORATED

**FILED**

99 DEC 18 AM II: 40

BY: _____ DEPUTY

6

7

8                UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11  AMERICA ONLINE INCORPORATED, a    )   No. **'98 CV 2284 S LAB**
    Delaware corporation,             )
12                                    )   **COMPLAINT FOR VIOLATIONS**
                        Plaintiff,    )   **OF THE COMPUTER FRAUD AND**
13                                    )   **ABUSE ACT (18 U.S.C. § 1030);**
            vs.                       )   **SERVICE MARK DILUTION (15**
14                                    )   **U.S.C. § 1125(c)); VIOLATION OF**
    MICHAEL ALEXANDER PERSAUD (a/k/a  )   **THE WASHINGTON UNSOLICITED**
15  JAMES BUTTERFIELD, HENRY          )   **COMMERCIAL ELECTRONIC**
    SUMMERS, BRIAN CRAWFORD) d/b/a    )   **MAIL ACT; VIOLATION OF THE**
16  ADVANCED NETWORK PROMOTIONS,      )   **VIRGINIA COMPUTER CRIMES**
                                      )   **ACT (Va. Code Ann. § 18.2-153.2 et**
17                      Defendant.    )   **seq.); UNFAIR COMPETITION (Cal.**
                                      )   **Bus. & Prof. Code § 17200 et seq.);**
18  _____  )   **TRESPASS TO CHATTELS;**
                                          **CONVERSION; CIVIL**
19                                        **CONSPIRACY; and UNJUST**
                                          **ENRICHMENT**
20

21         Plaintiff America Online Incorporated ("AOL") alleges as follows:

22                    **NATURE OF PLAINTIFF'S CLAIMS**

23         1.      Defendant Michael Alexander Persaud and, on information and belief,

24  parties acting in concert with him, have repeatedly bombarded AOL and its members with

25  millions of deceptive, unsolicited, and unwanted Internet electronic mail ("e-mail") messages

26  advertising a directory of "real home income opportunities" and a "Home Worker's Survival

27  Guide" in a dubious attempt to lure unwitting individuals into paying for guides to home

28  America Online Incorporated v. Michael Alexander Persaud et al.,
    USDC Southern District of California                                    Page 1

1  employment opportunities.  Despite demands by AOL that he cease sending unwanted and

2  unsolicited junk e-mail, defendant refused to stop these mass junk e-mailings and has persisted

3  in using deceptive techniques designed to frustrate AOL's ability to detect and filter his junk e-

4  mail messages.  Defendant's junk e-mail has resulted in thousands of member complaints and

5  has clogged AOL's computers and computer systems, co-opting valuable computer and staff

6  resources needed to deliver authorized Internet e-mails for AOL members.

7          2.      Defendant's indiscriminate mass mailings and deceptive practices cause

8  serious and irreparable injury to AOL by impairing the functioning of AOL's e-mail system

9  and harming AOL's business reputation and goodwill among its members.  Defendant has

10  violated the Computer Fraud and Abuse Act (18 U.S.C. §1030 *et seq.*), the Trademark Act of

11  1946 (15 U.S.C. § 1125(c)), the Washington State Unsolicited Commercial Electronic Mail Act,

12  the Virginia Computer Crimes Act (Va. Code Ann. § 18.2-152.2 *et seq.*), engaged in unfair

13  competition, and trespassed upon and converted for his own use AOL's personal property and,

14  on information and belief, conspired with others to commit these wrongs.  Defendant has also

15  been unjustly enriched at AOL's expense.

16          3.      AOL has demanded that defendant stop his mass junk mailings and has

17  tried to stop his misappropriation of its computers and computer system through technical

18  means, but its attempts at self-help have proven unsuccessful.  By this action, AOL seeks an

19  injunction to prevent further unlawful conduct, and compensatory and punitive damages.  AOL

20  also asks that a constructive trust be imposed in favor of AOL on all monies received by

21  defendant as a result of his bulk e-mail activities.

22                          **JURISDICTION AND VENUE**

23          4.      This is an action for violations of the Computer Fraud and Abuse Act (18

24  U.S.C. § 1030), the Trademark Act of 1946 (15 U.S.C. § 1125(c)), the Washington State

25  Unsolicited Commercial Electronic Mail Act, the Virginia Computer Crimes Act (Va. Code

26  Ann. § 18.2-152.2 *et seq.*), unfair competition, trespass to chattels, conversion, civil conspiracy,

27  and unjust enrichment.

28

1      5.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C.

2  § 1331,  and supplemental jurisdiction over plaintiff's state and common law claims pursuant to

3  28 U.S.C. § 1367.  This Court also has diversity jurisdiction over this action pursuant to 28

4  U.S.C. § 1332, as this action is between citizens of different states, and the amount in

5  controversy exceeds the sum or value of $75,000, exclusive of interest or costs.

6      6.      Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b) in

7  that defendant resides in this judicial district and a substantial part of the events giving rise to

8  the claims occurred in this judicial district.

9                                    **THE PARTIES**

10      7.      Plaintiff AOL is a corporation organized and existing under the laws of

11  the State of Delaware with its principal place of business at 22000 AOL Way, Dulles, Virginia

12  20166.  AOL is an Internet service provider ("ISP") that provides a proprietary, content-based

13  online service.  AOL maintains computers and other devices that enable its members to obtain

14  various services, including access to the Internet.  Its central computer system, which includes

15  specialized computers (called "servers") that process e-mail messages, is located in Reston,

16  Virginia.  E-mail sent to and from AOL members is processed through and stored on these

17  computers.  AOL's computers likewise provide the functionality for, and maintain the content

18  of, the AOL service provided throughout the United States and abroad.

19      8.      AOL has used as a trademark and as a service mark the initials "AOL,"

20  in various forms and styles, continuously in commerce to identify its products and services

21  since October 1989.  This mark has been registered as a trademark upon the Principal Register

22  of the United States Patent and Trademark Office as United States Registration No. 1,984,337,

23  registered July 2, 1996.  The mark has been registered as a service mark upon the Principal

24  Register of the United States Patent and Trademark Office as United States Registration No.

25  1,977,731, registered June 4, 1996.  These registrations are attached as Exhibit A.

26      9.      AOL has invested substantial resources to promote and protect the AOL

27  trademark and service mark in connection with the interstate and worldwide sale of its products

28

America Online Incorporated v. Michael Alexander Persaud et al.,
USDC Southern District of California                                                              Page 3

1  and services.

2        10.    AOL has registered the domain name "aol.com" with the InterNIC, the

3  organization that assigns and maintains directories of Internet addresses.  This domain name is

4  used extensively in interstate commerce and is recognized worldwide as a source identifier of

5  AOL's online services.

6        11.    On information and belief, defendant Michael Alexander Persaud (a/k/a

7  James Butterfield, Henry Summers and Brian Crawford), d/b/a Advanced Network Promotions,

8  is an individual residing in San Diego County, California at either 8650 Rumson Drive, Santee,

9  California 92071 or 8611 Paseo Del Sol, Santee, California 92071.  On information and belief,

10  Persaud is acting in concert with other individuals in doing the acts alleged in this complaint.

11  "Defendant" shall refer hereinafter to defendant Persaud and all individuals acting in concert

12  with him.

13                      **BACKGROUND ALLEGATIONS**

14  **The Internet**

15        12.    Defendant committed the acts complained of herein through the use of

16  the electronic messaging capabilities of the Internet.  The Internet is a complex "network of

17  networks" that interconnects innumerable smaller groups of linked computers.  All of the

18  networks comprising the Internet are connected in a manner that permits any computer on the

19  Internet to communicate with any other computer on the Internet.  Some of the components of

20  the Internet are owned by governmental organizations; however, AOL is a proprietary, content-

21  based internet service provider ("ISP") that owns and operates a domain site consisting of

22  computers and other devices that enable its members to gain access to the Internet and to send

23  and receive e-mail over the Internet.

24        13.    The Internet makes it possible for a user to exchange e-mail messages

25  rapidly with other Internet users in the United States and abroad.  E-mail can normally be sent

26  virtually instantaneously from one individual to another, or from an individual user to a large

27  group of addresses.  The Internet's e-mail functionality makes it possible for a sender easily to

28

1   transmit tens and even hundreds of thousands of copies of a single message.

2      14. The InterNIC, a consortium funded by the National Science Foundation,

3   is responsible for assigning the unique addresses used by computers to communicate through

4   the Internet.  These unique addresses are referred to as Internet Protocol ("IP") addresses.  Like

5   the unique street addresses and telephone numbers used by individuals and businesses for their

6   mail and telephone communications, IP addresses ensure orderly communications between

7   computer networks on the Internet.  An IP address consists of 4 sets of up to 3 numbers in the

8   following format:  123.123.123.123.

9      15. The InterNIC also assigns "domain" names to individuals, businesses, and

10  organizations using the Internet.  Domain names function as convenient shorthand IP addresses,

11  giving Internet users the option of using readily understandable proper names to identify

12  themselves and their communications, rather than cumbersome twelve-digit IP addresses.

13  Businesses are typically assigned domain names with the ".com" designation (e.g., "aol.com"),

14  while educational and governmental organizations usually are assigned ".edu" and ".gov"

15  domain names (e.g., "topuniversity.edu" and "federalagency.gov").  Because each domain name

16  corresponds to a unique IP address, the InterNIC performs the important task of maintaining

17  the directories that allow computers connected to the Internet to find the appropriate IP address

18  for a particular domain requested by a user.

19     16. An e-mail address consists of a name corresponding to the individual

20  user's account (the "user name") and the name of the domain within which the user's account is

21  located, separated by the "@" symbol (e.g., "jdoe@company.com").

22     17. E-mail messages contain "headers," generated by the sender's ISP, which

23  identify the sender's return e-mail address, the message's "subject," and other information

24  related to the transmission of the e-mail message (such as the date, time, and routing

25  information).  AOL's system is configured such that these "headers" are excerpted at the

26  beginning of each message and appear in full text at the conclusion of the message.

27     18. A sender who wishes to conceal his true identity and e-mail address can

28

1  falsify the header information in his e-mail transmissions or manipulate the information used in

2  the electronic header.  Various "stealth" software programs, designed for and marketed to the

3  senders of junk e-mail, facilitate the falsification of e-mail header information in mass mailings.

4  **Unsolicited Junk E-Mail**

5              19.    It costs virtually nothing for an individual sender to transmit an e-mail

6  message, regardless of the number of recipients.  Considerable resources are expended by the

7  ISP at the receiving end, however, storing, sorting, and delivering the e-mail.

8              20.    Although the sender of junk mail sent through the postal system must pay

9  the costs of delivery through the purchase of stamps, there are no stamps on the Internet.

10  Instead, the costs of storing, sorting, and delivering junk e-mail are borne -- involuntarily -- by

11  the recipient's ISP, and the recipients themselves.  When computer and staff resources are

12  consumed by massive batches of junk e-mail, known colloquially as "spam," the delivery of

13  legitimate, authorized e-mail is often impaired.

14              21.    Bulk e-mailers, or "spammers," engage in the practice precisely because

15  the medium permits them to shift their marketing costs onto the recipients' ISPs, such as AOL.

16  The ability to send junk e-mail from "throw away" Internet accounts or with falsified headers,

17  and thereby avoid accountability to the consumer, has made junk e-mailing an irresistibly

18  tempting marketing method for disreputable would-be entrepreneurs peddling get-rich schemes

19  and dubious products and services.

20              22.    The practice of unsolicited bulk e-mailing is widely condemned in the

21  Internet community.  AOL's Terms of Service specifically prohibit AOL members from using

22  their AOL accounts to send unsolicited bulk e-mail, and expressly reserve AOL's right to block

23  unsolicited bulk e-mail sent to its members from the Internet.  AOL's Unsolicited Bulk E-Mail

24  Policy expressly precludes the use of AOL's computer facilities for the transmission of

25  unsolicited e-mail through the Internet to AOL members.  In addition, AOL's Terms of Service

26  and E-Mail Policy prohibit members from "harvesting" or collecting the e-mail addresses of

27  other AOL members.  These policies apply to both members and non-members.

28

**Unsolicited Junk E-Mail Causes Substantial Harm to AOL's Computer Systems and Business Reputation**

23.     AOL's e-mail system was created solely for the benefit of AOL members, who pay prescribed fees and who agree to adhere to AOL's Terms of Service. The e-mail system is operated through dedicated servers that store and route e-mail messages between AOL's members. AOL permits its members to use the "aol.com" domain name, which when combined with a unique user name gives each member a distinctive e-mail address from which to exchange e-mail with Internet users (e.g., "member98@aol.com").

24.     Any e-mail that is sent through the Internet to an AOL address is first received and sorted by AOL's mail servers. The AOL mail system has a finite capacity designed to accommodate the demands imposed by AOL's members. AOL's computers and computer system are not designed to accommodate, and are vulnerable to disruption by, defendant's and others' indiscriminate mass mailings of unsolicited e-mail. AOL has been forced to devote thousands of hours of staff time to address member complaints about this unsolicited e-mail and expend millions of dollars for new equipment to process the mass mailings.

25.     The repeated transmission of massive batches of unsolicited e-mail messages by defendant and other junk e-mailers also degrades the performance of AOL's computers and computer system, forcing AOL to divert computer processing resources away from the handling of authorized e-mail for AOL members. The aggregation of time required to process these bulk e-mail transmissions slows the "delivery" of all e-mail to AOL members, and has at times resulted in significant delays in members' receipt of their e-mail from the Internet.

26.     The transmission of unsolicited bulk e-mail by defendant and other junk e-mailers also results in a substantial quantity of mail sent to invalid e-mail addresses, which causes additional harm to the performance of AOL's computers and computer system. For each message that contains undeliverable recipients, AOL's computers must attempt to transmit a message back to the originating site of the e-mail message to inform it of the delivery failure.

America Online Incorporated v. Michael Alexander Persaud et al.,
USDC Southern District of California                                                     Page 7

1  Attempts to send such "bounce" messages back to the sender's computers consume considerable

2  processing resources within AOL's computers and computer system.

3          27.    AOL has undertaken various technical efforts to permit its members to

4  opt out of receiving messages from domains and IP addresses that are or have been the subject

5  of member complaints regarding unsolicited bulk e-mail.  These methods, however, rely on

6  truthful e-mailing practices to be successful.  When senders, such as defendant, mail from

7  multiple and varying domains, employ random and varying user names, relay their messages

8  through the servers of innocent third parties, or falsify the headers on their e-mails to indicate

9  that their messages are from domains that AOL does not filter (e.g., "msn.com" or "aol.com"),

10  AOL's computers and computer system cannot detect and filter the e-mail.

11          28.    The practice of sending unsolicited commercial e-mail through AOL's

12  computers and computer system has the effect of unfairly shifting to AOL the costs of

13  transmitting these promotional messages.  It is AOL, rather than the junk e-mailer, that pays

14  the costs of the additional computer and staff resources that must be devoted to the processing

15  of the massive batches of e-mail that junk e-mailers transmit through AOL's computers and

16  computer system.  AOL members also pay for these unwanted bulk messages in time and effort

17  wasted in opening, reading, and discarding the messages.

18          29.    Junk e-mailers' activities have particularly adverse consequences for those

19  AOL members who pay for their access to AOL's online services and e-mail capability in

20  increments of time.  Time spent by such a member accessing, reviewing, and discarding junk

21  e-mail messages is paid for by the member according to the member's hourly billing rates.

22  These AOL members thus end up paying twice for the activities of junk e-mailers, through the

23  increased costs and delays in AOL's operations occasioned by the processing of mass quantities

24  of e-mail, and through increased monthly billings for their connection time with AOL.  The

25  costs of member dissatisfaction ultimately are borne by AOL, in lost business and harm to its

26  reputation and goodwill.

27          30.    The receipt of unsolicited, unwanted e-mail is the number one complaint

28

1  voiced by AOL members about the Internet e-mail system.  AOL receives approximately up to

2  two hundred thousand such complaints per day.

3  **Defendant's Spamming Practices**

4  　　　　31.　　In or before March 1997, AOL members began receiving large volumes

5  of unsolicited junk e-mail from "James Butterfield," "Henry Summers," or "Brian Crawford"

6  advertising "real home income opportunities," a directory of companies that offer home

7  employment, and/or "The Home Worker's Survival Guide."  These e-mail messages direct

8  recipients to send checks payable to "ANP" (Advanced Network Promotions) to a post office

9  box in Santee, California.  <u>See</u> Butterfield Messages, attached as Exhibit B.

10  　　　　32.　　Millions of unsolicited junk e-mail messages from "James Butterfield,"

11  "Henry Summers," and "Brian Crawford" have been sent to AOL members using the techniques

12  described above -- randomized sender addresses and altered header information -- to elude

13  AOL's filtering and blocking systems and to disguise the origin of the messages.

14  　　　　33.　　Unsolicited junk e-mail messages from "James Butterfield, "Henry

15  Summers," and "Brian Crawford" use the "aol.com" domain name in their headers in forged

16  recipient addresses.  These forged addresses have caused confusion among AOL members and

17  others and led them to believe that AOL sponsors or approves of defendant's spamming

18  practices.

19  　　　　34.　　AOL has received tens of thousands of complaints from its members

20  about messages from "James Butterfield," "Henry Summers," and "Brian Crawford."

21  　　　　35.　　On April 16, 1998, AOL sent a letter to "James Butterfield" at the

22  address listed in the above-mentioned e-mail messages.  AOL's letter notified Butterfield that

23  his unsolicited e-mail transmissions were causing injury to AOL and had resulted in numerous

24  complaints by AOL members.  AOL demanded that Butterfield and his agents or

25  representatives cease and desist from transmitting unsolicited bulk e-mail to AOL and its

26  members and prohibited Butterfield and any other person(s) working in concert with him or on

27  his behalf from transmitting any e-mail through AOL's proprietary computers and computer

28

1 │ networks.  AOL did not receive any response.

2 │         36.    On April 16, 1998, AOL also sent a cease and desist letter in the form of

3 │ an e-mail message to "jbutterfield33@prodigy.net," the return address appearing in the header

4 │ of an e-mail message sent by "James Butterfield" to an AOL member.  The message was

5 │ returned as undeliverable.

6 │         37.    Following the mailing of AOL's cease and desist letter, and as recently as

7 │ November 1998, AOL members have continued to receive from "James Butterfield," "Henry

8 │ Summers," and "Brian Crawford" large volumes of unsolicited e-mail messages advertising

9 │ home employment opportunities.  "James Butterfield," "Henry Summers," and "Brian Crawford"

10 │ have also continued to engage in deceitful practices such as randomizing sender addresses and

11 │ altering header information to evade AOL's filtering and blocking systems.  <u>See</u> Exhibit B.

12 │         38.    On information and belief, "James Butterfield," "Henry Summers," and

13 │ "Brian Crawford" are aliases used by defendant Persaud.

14 │         39.    On information and belief, defendant, either individually or through his

15 │ agents, maintains or has maintained one or more membership accounts with AOL, which

16 │ accounts have been used to facilitate the collection or "harvesting" of AOL members' e-mail

17 │ addresses.

18 │ **FIRST CAUSE OF ACTION**

19 │ **(Impairing Computer Facilities in Violation of the Computer Fraud And Abuse Act,<br>18 U.S.C. § 1030(a)(5))**

20 │

21 │         40.    AOL repeats and realleges paragraphs 1 through 39 of this complaint as if

│ fully set forth herein.

22 │         41.    In connection with its provision of online and Internet computer services

23 │ to its members, who are citizens of California and other states, AOL maintains computers and a

24 │ computer system that are "protected computers" as the term is defined in 18 U.S.C. §

25 │ 1030(e)(2)(B) because they are used in interstate commerce and communication ("AOL's

26 │ protected computer facilities").

27 │         42.    Since at least as early as March 1997, defendant has repeatedly

28 │

1 | transmitted to AOL's protected computer facilities millions of unsolicited commercial e-mail
2 | messages in batches of tens and hundreds of thousands without authorization.

3 |         43.     On each occasion on which defendant transmitted large batches of
4 | unsolicited junk e-mail messages, defendant knew that his bulk mailings would impair the
5 | operation of AOL's protected computer facilities and AOL's ability to provide quality e-mail
6 | services to its members.

7 |         44.     Defendant has engaged in deceptive practices for the purpose of
8 | attempting to conceal from AOL the actual quantity of junk mail being transmitted by
9 | defendant to AOL members, thereby frustrating AOL's efforts to protect its e-mail system from
10 | injury and shield its members from unwanted junk mail.

11 |         45.     Defendant knowingly and intentionally caused the transmission of
12 | information to, and gained access to, AOL's protected computer facilities without authorization,
13 | and as a result of such conduct caused damage, or recklessly caused damage, in violation of 18
14 | U.S.C. § 1030(a)(5).

15 |         46.     As a result of defendant's conduct, AOL has suffered damages, including
16 | impairment of the integrity and/or availability of data, programs, systems, and/or information in
17 | AOL's protected computer facilities, in an amount to be determined at trial. AOL's damages
18 | aggregate to at least $5,000 in value in the year preceding the date of the filing of this
19 | complaint.

20 |         47.     Defendant threatens to continue to engage in the unlawful actions alleged
21 | herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to
22 | AOL and its members. It is difficult to ascertain the amount of compensation that could afford
23 | AOL adequate relief for defendant's continuing unlawful acts. AOL's remedy at law is,
24 | therefore, inadequate to compensate for the injuries threatened, and AOL is entitled to
25 | preliminary and permanent injunctive relief.

26
27
28

## SECOND CAUSE OF ACTION

**(Exceeding Authorized Access in Violation of the Computer Fraud and Abuse Act,
18 U.S.C. § 1030(a)(2))**

48.     AOL repeats and realleges the allegations of paragraphs 1 through 47 of this complaint as if fully set forth herein.

49.     In connection with its provision of online and Internet computer services to its members, who are citizens of California and other states, AOL maintains computers and a computer system that are "protected computers" as the term is defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and communication.

50.     AOL's Terms of Service and Bulk E-Mail Policy specifically prohibit AOL members from using their AOL accounts to harvest or collect the e-mail addresses of other AOL members.

51.     On information and belief, defendant, either individually or through those acting in concert with him, maintains or has maintained one or more AOL membership accounts and has used those accounts to "harvest" or collect the e-mail addresses of other AOL members, and has transmitted e-mails to AOL and its members without authorization.

52.     Defendant has intentionally "exceeded authorized access," as that term is defined in 18 U.S.C. § 1030(e)(6), to AOL's protected computers by harvesting or collecting the e-mail addresses of other AOL members, has obtained information via an interstate communication to which he was not entitled, and has thereby violated 18 U.S.C. §1030(a)(2).

53.     By exceeding authorized access to AOL's protected computers, defendant has caused AOL loss or damage in an amount to be determined at trial, and aggregating at least $5,000 during a one-year period preceding the filing of this complaint.

54.     Defendant threatens to continue to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to AOL and its members. It is difficult to ascertain the amount of compensation that could afford AOL adequate relief for defendant's continuing unlawful acts. AOL's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

## THIRD CAUSE OF ACTION

### (Service Mark Dilution, 15 U.S.C. § 1125(c))

55.     AOL repeats and realleges paragraphs 1 through 54 of this complaint as if fully set forth herein.

56.     Defendant has made commercial use of the domain name "aol.com" with the willful intent to trade on AOL's reputation or to cause dilution of the famous marks AMERICA ONLINE, AOL, and "aol.com."

57.     Defendant's use of the domain name "aol.com" began long after AOL's marks had become well known and famous.

58.     Defendant's use of the domain name "aol.com" causes dilution of the distinctive quality of AOL's famous marks AMERICA ONLINE, AOL, and "aol.com."

59.     Defendant's use of the domain name "aol.com" lessens the capacity of AOL's famous marks AMERICA ONLINE, AOL and "aol.com" to identify and distinguish AOL's goods and services.

60.     Defendant's activities complained of herein constitute service mark dilution within the meaning of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. § 1125(c).

61.     Defendant's conduct has caused AOL irreparable injury, loss of reputation and pecuniary damages.  Unless enjoined by this court, defendant will continue to willfully dilute AOL's famous marks to the immediate and irreparable damage of AOL.

## FOURTH CAUSE OF ACTION

### (Violation of Washington State's Unsolicited Commercial Electronic Mail Act)

62.     AOL repeats and realleges the allegations of paragraphs 1 through 61 of this complaint as if fully set forth herein.

63.     AOL maintains computer facilities that provide and enable computer access by multiple users to its computer servers and the Internet and thereby qualifies as an "Interactive computer service" as that term is defined by the Washington State Unsolicited

1 | Commercial Electronic Mail Act (the "Act").

2 |      64.   Defendant has initiated the transmission of numerous commercial
3 | electronic mail messages to numerous electronic mail addresses belonging to AOL members
4 | that the defendant knew, or had reason to know, were held by Washington residents.

5 |      65.   The commercial electronic mail messages sent by defendant used a third
6 | party's Internet domain name without permission of the third party, misrepresented information
7 | identifying the point of origin or transmission path of the commercial electronic mail message,
8 | and/or contained false or misleading information in the subject line.

9 |      66.   Defendant transmitted these commercial electronic mail messages after
10 | the effective date of the Act.

11 |      67.   Defendant's actions constitute numerous violations of the Act and, as
12 | provided by the Act, are also unfair and deceptive acts in trade or commerce and an unfair
13 | method of competition in violation of 19.86 RCW (1997), the Washington Consumer Protection
14 | Act.

15 |      68.   By virtue of defendant's violations of the Act and 19.86 RCW (1997),
16 | AOL is entitled to liquidated damages in the amount provided by the Act, and/or any other
17 | remedies provided by 19.86 RCW (1997), including reasonable attorney's fees.

18 |      69.   Defendant threatens to engage in unlawful actions alleged herein, and
19 | unless restrained and enjoined will continue to do so, causing irreparable harm to AOL.  AOL
20 | is therefore entitled to preliminary and permanent injunctive relief.

21 | **FIFTH CAUSE OF ACTION**

22 | **(Violation of the Virginia Computer Crimes Act, Va. Code Ann. § 18.2-152.2 *et seq.*)**

23 |      70.   AOL repeats and realleges the allegations of paragraphs 1 through 69 of
24 | this complaint as if fully set forth herein.

25 |      71.   In connection with the provision of online and Internet computer services
26 | to its members who are citizens of the Commonwealth of Virginia and other States, AOL
27 | maintains in the Commonwealth of Virginia computers and a computer system that are

28 |

1  "property" within the meaning of Va. Code Ann. §§ 18.2-152.2.

2        72.    Without authority, defendant has repeatedly transmitted batches of

3  unsolicited commercial e-mail messages to AOL's computers and computer system in the

4  Commonwealth of Virginia.

5        73.    In transmitting these batches of unsolicited commercial e-mail messages,

6  defendant knowingly falsified portions of the Internet "header" information on his e-mail

7  messages for the purpose of attempting to conceal from AOL and its members the actual

8  domain or IP address which served as the point of origin of the transmission.

9        74.    Without authority, defendant has obtained access to and used AOL's

10  computers and computer system with the intent to obtain the use of AOL's property and

11  services by false pretenses, in violation of Va. Code. Ann. § 18.2-152.3.

12        75.    Without authority, defendant has willfully used AOL's computers and

13  computer network, in violation of Va. Ann. Code § 18.2-152.6.

14        76.    The foregoing acts of defendant have caused injury to AOL, AOL's

15  computers and computer system, and to AOL's business relations, reputation, and goodwill.

16        77.    Defendant threatens to continue to engage in the unlawful transmissions

17  complained of herein, and unless restrained and enjoined will continue to do so, impairing the

18  services provided to AOL members and causing AOL irreparable damage.  Because of

19  defendant's pattern and practice of using numerous and varying domain names and IP addresses

20  from which to carry out unlawful transmissions, AOL otherwise will be obliged to maintain

21  multiple actions concerning the activities of this defendant.  It is difficult to ascertain the

22  amount of compensation that could afford AOL adequate relief for defendant's continuing

23  unlawful acts.  AOL's remedy at law is, therefore, inadequate to compensate for the injuries

24  threatened.

25

26

27

28

**SIXTH CAUSE OF ACTION**

**(Unfair Competition, Cal. Bus. & Prof. Code § 17200 *et seq.*)**

78.   AOL repeats and realleges paragraphs 1-77 of this complaint as if fully set forth herein.

79.   Defendant has engaged in unlawful, unfair or fraudulent business practices or acts in violation of state and federal law as described above.

80.   By these acts, defendant has engaged in unfair competition in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*

81.   Defendant's acts of unfair competition have caused AOL injury, including loss of goodwill and customers and damage to business reputation, among other damages, in an amount to be determined at trial.

82.   Defendant threatens to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to AOL. AOL is therefore entitled to preliminary and permanent injunctive relief.

**SEVENTH CAUSE OF ACTION**

**(Trespass To Chattels)**

83.   AOL repeats and realleges paragraphs 1 through 82 of this complaint as if fully set forth herein.

84.   The computers, computer networks, and computer services that comprise AOL's e-mail system are the personal property of AOL.

85.   Without valid authorization, defendant has intentionally and repeatedly obtained access to, and made use of, AOL's proprietary computer equipment and e-mail system to facilitate defendant's spamming operation for defendant's own economic benefit.

86.   Through defendant's practice and pattern of repeatedly causing the transmission of unsolicited commercial e-mail to tens of thousands of AOL users, and the resulting transmission of a substantial number of bounced back messages and complaints in response to defendant's messages, defendant has wrongfully exercised dominion over AOL's

1   computers and e-mail system in denial of AOL's own rights to that property, and has thereby

2   deprived AOL and its members of legitimate use of this commercially valuable system.

3           87.    Defendant's conduct constitutes trespass to AOL's chattels.

4           88.    As a result of defendant's trespass, AOL has been damaged, including

5   loss of goodwill and customers and damage to business reputation, among other damages, in an

6   amount to be determined at trial.  Because these damages cannot be readily ascertained, AOL

7   lacks an adequate remedy at law and is entitled to preliminary and permanent injunctive relief.

8           89.    The conduct of defendant alleged above was intentional, wanton, willful,

9   oppressive and in conscious disregard of the rights of AOL.  Accordingly, AOL is entitled to

10  exemplary and/or punitive damages in an amount sufficient to punish defendant and deter

11  defendant and others from engaging in similar conduct.

12        **EIGHTH CAUSE OF ACTION**

13        **(Conversion)**

14          90.    AOL repeats and realleges paragraphs 1 through 89 of this complaint as if

15  fully set forth herein.

16          91.    Defendant, without authorization, has intentionally used AOL's

17  proprietary computer and e-mail system for defendant's own commercial benefit.  This

18  unauthorized use by defendant has deprived AOL and its customers of the legitimate use of this

19  commercially valuable proprietary system.

20          92.    Defendant's conversion of AOL's commercial property has caused and

21  continues to cause AOL to suffer irreparable injury, loss of reputation, and pecuniary damages

22  in an amount to be determined at trial.

23          93.    Defendant committed the acts described above intentionally, maliciously,

24  in an oppressive manner, and in conscious disregard of AOL's rights.  Accordingly, AOL is

25  entitled to punitive damages in an amount sufficient to punish defendant and deter defendant

26  and others from engaging in similar conduct.

27

28

America Online Incorporated v. Michael Alexander Persaud et al.,
USDC Southern District of California                      Page 17

## NINTH CAUSE OF ACTION

### (Common Law Conspiracy to Commit Trespass to Chattels, Convert AOL's Property, and Violate State and Federal Statutes)

94.     AOL repeats and realleges the allegations of paragraphs 1 through 93 of this complaint as if fully set forth herein.

95.     On information and belief, defendant has conspired and combined with third parties to send unauthorized bulk e-mails to and through AOL's computers and computer system to AOL members, using false pretenses for the purpose of concealing from AOL the source and actual quantity of messages sent, and causing damage by impairing the operation of AOL's computers and computer systems and impairing AOL's provision of e-mail services to its members in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5).

96.     On information and belief, defendant has conspired and combined with third parties to use AOL membership accounts to harvest AOL members' e-mail addresses, thereby exceeding his authorized access to AOL's computers and computer system in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2).

97.     On information and belief, defendant has conspired and combined with third parties to forge and make unauthorized use of AOL's domain name to the confusion of AOL's members and others, thereby diluting AOL's service mark in violation of 15 U.S.C. § 1125(c)

81.     On information and belief, defendant has conspired and combined with third parties to send unauthorized bulk e-mails to and through AOL's computers and computer system to AOL members, wrongfully exercising dominion over AOL's computers and computer system, and depriving AOL and its members of the legitimate use of this commercially valuable system, and thereby committing trespass to chattels and converting AOL's property for his own use.

98.     The effectuation of these conspiracies through the transmission by defendant and  his co-conspirators of unauthorized bulk e-mail to and through AOL's computers and computer system has damaged AOL and its protected computer systems and has

America Online Incorporated v. Michael Alexander Persaud et al.,

1   damaged AOL's business relations, reputation, and goodwill among its members in an amount

2   to be determined at trial.

3           99.    Defendant and those acting in concert with him committed the acts

4   described above intentionally, maliciously, in an oppressive manner, and in conscious disregard

5   of AOL's rights.  Accordingly, AOL is entitled to punitive damages in an amount sufficient to

6   punish defendant and deter defendant and others from engaging in similar conduct.

7   **TENTH CAUSE OF ACTION**

8   **(Unjust Enrichment and Imposition of a Constructive Trust)**

9           100.    AOL repeats and realleges paragraphs 1 through 99 of this complaint as if

10   fully set forth herein.

11           101.    Defendant has unjustly derived considerable economic benefit from the

12   unauthorized use of AOL's proprietary computer system and other resources.

13           102.    Defendant has also unjustly derived considerable economic benefit from

14   the conduct described above by shifting the costs associated with receiving, sorting, storing and

15   responding to customer complaints about unsolicited junk e-mail, and with processing

16   undeliverable messages from defendant's lists.  AOL has not been compensated in any way by

17   defendant for these costs.

18           103.    Any and all profits made by defendant as a result of his spamming and

19   harvesting practices constitute unjust enrichment.

20           104.    AOL has been damaged by defendant's conduct and is entitled to an

21   award of damages in an amount to be determined at trial, and/or is entitled to a constructive

22   trust to be imposed on all profits made by defendant as a result of the practices described

23   above.

24   **PRAYER FOR RELIEF**

25           WHEREFORE, plaintiff America Online Incorporated seeks entry of judgment in

26   its favor and against defendant as follows:

27           A.    Granting preliminary and permanent injunctive relief against defendant

28

and all persons acting in concert or participating with him, enjoining them from:

        1.    Sending, transmitting, or otherwise facilitating the transmission of any unsolicited electronic mail message, or any electronic communication of any kind, to AOL or its members;

        2.    Sending, transmitting, or otherwise facilitating the transmission of any electronic mail message, or any electronic communication of any kind, to or through AOL's proprietary computer network or to AOL members, which message or communication bears any reference to any product or service sold or marketed by defendant or any person acting in concert or participating with him;

        3.    Sending, transmitting, or otherwise facilitating the transmission of any electronic mail message, or any electronic communication of any kind, to or through AOL's proprietary computer network or to AOL members, which message or communication bears any false, fraudulent, anonymous, inactive, deceptive or invalid header information, or otherwise uses any other artifice, scheme or method of transmission that would prevent or impede the automatic return of undeliverable electronic mail to its original and true point of origin;

        4.    Causing their electronic mail or messages to bear any AOL-registered trade or service mark or other symbol or representation falsely indicating that AOL has endorsed their products or services, that AOL is affiliated in any way with the defendant, or that any mail or message from them originated from, or was in any way transmitted through or by, AOL or any of its members;

        5.    Obtaining and/or using membership with AOL;

        6.    Acquiring, transferring or compiling AOL member addresses for the purpose of transmitting unsolicited e-mail to those AOL members or engaging in any other actions that result in the receipt of any unwanted mail by AOL and its members.

        B.    Awarding AOL compensatory damages, in an amount to be proven at trial, caused by defendant's violation of the Computer Fraud and Abuse Act, the Trademark

1  Act of 1946, the Washington State Unsolicited Commercial Electronic Mail Act, the Virginia

2  Computer Crimes Act, and by defendant's acts of unfair competition, trespass and conversion;

3          C.      Awarding AOL punitive damages against defendant, in an amount

4  sufficient to punish and deter this defendant and others from similar malicious, oppressive, and

5  fraudulent conduct in the future;

6          D.      Imposing a constructive trust in favor of AOL on all monies received by

7  the defendant as a result of his bulk e-mailing activities;

8          E.      Awarding AOL its costs and attorneys' fees in prosecuting this action;

9  and

10          F.      Granting AOL such other or additional relief as this court deems just and

11  proper under the circumstances.

12  DATED:  December *17*, 1998        STEINHART & FALCONER LLP
                                  ANDREW J. BERMAN

13                                    LISA M. SITKIN

14

15                       By:_____

16                           Andrew J. Berman
                         Attorneys for Plaintiff

17                           AMERICA ONLINE INCORPORATED

F:\...\aol\butter1\jbutter2.cmp

18

19

20

21

22

23

24

25

26

27

28

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38



## United States Patent and Trademark Office

Reg. No. 1,984,337
Registered July 2, 1996

### TRADEMARK
### PRINCIPAL REGISTER

## AOL

AMERICA ONLINE, INC. (DELAWARE COR-
PORATION)
8619 WESTWOOD CENTER DRIVE
VIENNA, VA 221822285

FOR: COMPUTER OPERATING PROGRAMS
AND COMPUTER OPERATING SYSTEMS;
PRE-RECORDED COMPUTER PROGRAMS
FOR ACCESSING COMPUTER NETWORKS,

COMPUTER ONLINE SYSTEMS, IN CLASS 9
(U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 10-0-1989; IN COMMERCE
10-0-1989.

SER. NO. 74-724,878, FILED 9-5-1995.

DAVID H. STINE, EXAMINING ATTORNEY

EXHIBIT A

Int. Cls.: 35, 38 and 42

Prior U.S. Cls.: 100, 101, 102 and 104

Reg. No. 1,977,731

# United States Patent and Trademark Office

Registered June 4, 1996

## SERVICE MARK
### PRINCIPAL REGISTER

## AOL

AMERICA ONLINE, INC. (DELAWARE COR-
PORATION)
8619 WESTWOOD CENTER DRIVE
VIENNA, VA 221822285

FOR: ELECTRONIC STORAGE AND RE-
TRIEVAL OF DATA AND DOCUMENTS IN
THE FIELDS OF BUSINESS, FINANCE, NEWS,
WEATHER, SPORTS, COMPUTING AND COM-
PUTER SOFTWARE, GAMES, MUSIC, THEA-
TER, MOVIES, TRAVEL, EDUCATION, LIFE-
STYLES, HOBBIES AND TOPICS OF GENER-
AL INTEREST, IN CLASS 35 (U.S. CLS. 100, 101
AND 102).

FIRST USE 10-2-1989; IN COMMERCE
10-2-1989.

FOR: TELECOMMUNICATIONS SERVICES,
NAMELY ELECTRONIC TRANSMISSION OF
DATA, IMAGES, AND DOCUMENTS VIA
COMPUTER TERMINALS; ELECTRONIC MAIL
SERVICES; AND FACSIMILE TRANSMISSION,
IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 10-2-1989; IN COMMERCE
10-2-1989.

FOR: COMPUTER SERVICES, NAMELY
LEASING ACCESS TIME TO COMPUTER DA-
TABASES, COMPUTER BULLETIN BOARDS,
COMPUTER NETWORKS, AND COMPUTER-
IZED RESEARCH AND REFERENCE MATERI-
ALS, IN THE FIELDS OF BUSINESS, FI-
NANCE, NEWS, WEATHER, SPORTS, COM-
PUTING AND COMPUTER SOFTWARE,
GAMES, MUSIC, THEATER, MOVIES,
TRAVEL, EDUCATION, LIFESTYLES, HOB-
BIES AND TOPICS OF GENERAL INTEREST;
COMPUTERIZED DATING SERVICES; COM-
PUTER CONSULTATION SERVICES; COMPUT-
ERIZED SHOPPING VIA TELEPHONE AND
COMPUTER TERMINALS IN THE FIELDS OF
COMPUTER GOODS AND SERVICES AND
GENERAL CONSUMER GOODS, IN CLASS 42
(U.S. CLS. 100 AND 101).

FIRST USE 10-2-1989; IN COMMERCE
10-2-1989.

OWNER OF U.S. REG. NO. 1,618,143.

SER. NO. 74-585,587, FILED 10-14-1994.

ANDREW BAXLEY, EXAMINING ATTORNEY

```
From          @aol.com Mon Nov 23 19:10:08 EST 1998
Received: from tosmail2.mail.aol.com (tosmail2.mail.aol.com [172.31.106.124]) by m
From:          @aol.com
Received: (from root@localhost)
          by tosmail2.mail.aol.com (8.8.5/8.7.3/AOL-2.0.0)
          id TAA20767 for junkmail@junkmail.aol.com;
          Mon, 23 Nov 1998 19:10:30 -0500 (EST)
Date: Mon, 23 Nov 1998 19:10:30 -0500 (EST)
Message-ID: <981123191030_91811799@tosmail2>
To: TOSspam@aol.com, TOSEMail1@aol.com
Subject: Fwd: Extra Income
MIME-Version: 1.0
Content-Type: text/plain; charset=unknown-8bit
Content-Transfer-Encoding: 8bit

do you guys really ty to stop this stuf?,my friends and i constantly report
it,but we keep getting spammed. contact internic and shut down the blasted
sites if they don't stop spam mail.please!!!!
---------------------
Forwarded message:
From:   Bfield21@mci2000.com
To:          @aol.com
Date: 98-11-22 21:49:36 est
```

*From the Desk*

*of*

*James Butterfield*

Dear Friend,

   A nice pay check made out in your name could be delivered right
your mailbox every week. Companies all over America are eager to sta
paying you. By doing pleasant work at home, you can get checks from
two, or even several companies at once. Just write to the sources I
you and start cashing in.

   My name is James Butterfield. I investigate companies that offe
for people to make money at home. Let me help you avoid worthless of
and take advantage of real home income opportunities. There is no
reason to be short of money when so many good companies are looking
more home workers.

**Companies That Really Do
Pay You To Stuff Envelopes**

   Let me talk about stuffing envelopes first because there is so
confusing information about this appealing work. It really does exis
it is not what you get when you pay for most programs that advertise
envelope stuffing.

**EXHIBIT B**

With real envelope stuffing, you do not pay
any fee or buy any materials to get started.
And you definitely do not have to place any
ads or pin up bulletin board notices.

Judith Riley is a good example to show exactly how it works. A
delivers all of the materials right to her door. Everything is suppl
free by the company- and that includes postage stamps. She has to
insert letters and brochures into envelopes, put on mailing labels a
postage stamps, and seal them. A driver then takes them to the post

Judy is paid for each envelope completed. It does not depend on
company getting orders or anything like that. She gets paid each wee
all of the envelopes completed that week. The more envelopes she doe
more she gets paid. Judy says, "I really like this work because it a
me to stay home and take care of my kids. They even enjoy pitching i
easy enough to do while watching television."

Work like this is available locally in all parts of the country
you would like to try it, just follow the directions in Part One of
Earnings Directory. I guarantee you will not have to pay any fee.

## Companies That Pay You
## To Assemble Products

Some companies will pay you to sew or assemble products. They s
the materials, and you do the work. Then you send the completed prod
back to the company, and they pay you the agreed amount.

You do not have to go out and sell any products yourself. Step-
instructions tell you exactly what to do to get paid. Each company p
to hundreds of dollars a week, and you can work with as many compani
you want. Here are some examples:

Sew pot holders ? Make dolls ? Clean mohair
? Make hair bows ? Assemble stuffed animals
? Make dollhouse miniatures ? Sew baby bibs
? Assemble beaded jewelery ? Make placemats
? Sew duffle bags ? Assemble picture frames
? Sew baby bonnets ? Make wooden toys

These companies do not require any special experience or educat
They do not ask you your age, sex, or marital status. And it's fine
them wherever you live as long as it can be reached by the U.S. Post
service and UPS.

Remember: there is no selling involved. They send you the
materials; you send back the completed products and get paid. The mo
do, the more money you make. It's as simple as that.

## Pick What You Like To Do

From the many firms that offer opportunities to earn money at h

have selected over 200 for Part Two of my book. Each listing include
name and address and the type of opportunity offered.

My book does not list any multi-level marketing or anything tha
requires special training. A few of the opportunities involve simple
such as sewing or decorative painting. Most need no special skills a
And no previous experience is ever required.

I update my directory regularly to bring you the latest listing
companies with current openings. Plenty of extra listings are includ
make up for the few that may expire before you apply.

You can be an indepedent home worker for as many companies as y
like. Some people regularly receive checks from several companies. Y
never have to meet any quota or do any more work than you want. It's
entirely up to you.

I suggest you start with at least one or two companies that app
you the most. Once you see that money coming in, you will probably w
earn even more. It really can be fun.

### Solid No-Nonsense
### Money-Back Guarantee

The "Butterfield Home Earnings Directory" costs only $25.00 plu
for postage and handling. Just because the price is low, don't think
skimped on research. Companies charge as much as $39.95 for director
with far fewer listings. I know because I buy them just to make sure
don't miss any good openings.

You don't have to take my word for it. You be the judge. The sa
isn't final until <u>you tell me</u> you are satisfied. When you get the
book, look over the many wonderful opportunities. Write to the compa
you like and see how quickly you can start to earn pay checks while
at home watching television. Work when you feel like working. Rest w
you want. It really can be that easy. I guarantee it.

If it's not exactly like I say, or if you are not satisfied for
reason, just return the complete book within 60 days for a full refu
your $25.00. No questions asked! You do not have to prove that you s
any envelopes or tried anything. All you have to do is return the bo
intact to get your refund. That's okay if it's dirty or bent from us
main concern is that you are happy.

### Exciting Bonuses

To make doubly sure you are delighted with my book, I will incl
three exciting bonuses that introduce you to my favorite programs. S
programs from other companies could easily cost much more than the p
my book for just one of them- and it probably wouldn't be as good. E
of these programs is the best of its kind.  There are none better at
price. As one of my satisfied customers, you can get all three absol
free!

**Bonus #1: Receive One Dollar For
Each Envelope You Stuff And Return**

Envelopes come to you already addressed and stamped. You pay no
whatsoever, and you can do as many as you want each week when you
follow these easy instructions. Just send in the special form you re
in the book.

**Bonus #2: Get Paid Up
To $1,440.00 Each Week**

for mailing circulars. Receive checks directly from a reliable
that has paid mailers over one million dollars. Commission checks up
$1,440.00 are mailed every Friday. Use the special form in my book,
can join this easy program absolutely free.

**Bonus #3: Make up to $7,600.00**

each time you mail two special letters. Nothing else makes mone
fast. Mail one letter to business "A" and the second one to business
Return the special form in my book, and I'll reveal my confidential
for this clever strategy. I'll tell you what to write and who to sen
letters to. It really does work, and it is completely legal and ethi
Best of all, you can do it every month and keep right on collecting
money.

Paychecks from many sources can soon be on their way to your ma
The first step is to get my book and contact the companies you like
Complete the handy order form and mail it so you can get started.

Sincerely,

*James Butterfield*

-----------cut here--------------------------------------------------
ANP                                              #B1009
c/o James Butterfield
P.O. Box 712102
Santee, CA 92072- 2102

( ) Yes, I want to get paid at home. Please rush "The Butter
Home Earnings Directory" to me by first class mail under
solid money-back guarantee. Enclosed is $28.00.* (Califo
customers must add $2.00 for tax. $30.00 total)

*Checks may be made payable to ANP

Name_____

Address_____

City, State, Zip_____
Internal Code [E35GR(16
-----------cut here-------------------------------------------------

-------------------- Headers -------------------------------
Return-Path:
Received: from  relay07.mx.aol.com (relay07.mail.aol.com [172.31.109
air09.mail.aol.com (v51.29) with SMTP; Sun, 22 Nov 1998 21:49:36 -05
Received: from tern.prod.itd.earthlink.net (tern.prod.itd.earthlink.
[207.217.120.121])
    by relay07.mx.aol.com (8.8.8/8.8.5/AOL-4.0.0)
    with ESMTP id VAA17074;
    Sun, 22 Nov 1998 21:49:28 -0500 (EST)
From: Bfield21@mci2000.com
Received: from mail.anpsmtp.com (1Cust66.tnt19.lax3.da.uu.net
[208.254.132.66])
 by tern.prod.itd.earthlink.net (8.8.7/8.8.5) with SMTP id SAA27088;
 Sun, 22 Nov 1998 18:46:23 -0800 (PST)
Message-Id: <199811230246.SAA27088@tern.prod.itd.earthlink.net>
To:
Subject: Extra Income
Date: Sun, 22 Nov 1998 15:06:00

```
From ████████@aol.com Mon Nov 23 14:17:49 EST 1998
Received: from tosmail2.mail.aol.com (tosmail2.mail.aol.com [172.31.106.124]) by m
From: ████████@aol.com
Received: (from root@localhost)
          by tosmail2.mail.aol.com (8.8.5/8.7.3/AOL-2.0.0)
          id OAA10777 for junkmail@junkmail.aol.com;
          Mon, 23 Nov 1998 14:18:12 -0500 (EST)
Date: Mon, 23 Nov 1998 14:18:12 -0500 (EST)
Message-ID: <981123141810_-285208437@tosmail2>
To: TOSspam@aol.com
Subject: Fwd: Extra Income
MIME-Version: 1.0
Content-Type: text/plain; charset=unknown-8bit
Content-Transfer-Encoding: 8bit

plz remove me from this mailing list
---------------------
Forwarded message:
From:    Bfield29@mci2000.com
To: ████████ aol.com
Date: 98-11-23 02:03:29 est
```

*From the Desk*

*of*

*James Butterfield*

Dear Friend,

A nice pay check made out in your name could be delivered right
your mailbox every week. Companies all over America are eager to sta
paying you. By doing pleasant work at home, you can get checks from
two, or even several companies at once. Just write to the sources I
you and start cashing in.

My name is James Butterfield. I investigate companies that offe
for people to make money at home. Let me help you avoid worthless of
and take advantage of real home income opportunities. There is no
reason to be short of money when so many good companies are looking
more home workers.

### Companies That Really Do
### Pay You To Stuff Envelopes

Let me talk about stuffing envelopes first because there is so
confusing information about this appealing work. It really does exis
it is not what you get when you pay for most programs that advertise
envelope stuffing.

With real envelope stuffing, you do not pay
any fee or buy any materials to get started.

And you definitely do not have to place any
ads or pin up bulletin board notices.

Judith Riley is a good example to show exactly how it works. A
delivers all of the materials right to her door. Everything is suppl
free by the company- and that includes postage stamps. She has to
insert letters and brochures into envelopes, put on mailing labels a
postage stamps, and seal them. A driver then takes them to the post

Judy is paid for each envelope completed. It does not depend on
company getting orders or anything like that. She gets paid each wee
all of the envelopes completed that week. The more envelopes she doe
more she gets paid. Judy says, "I really like this work because it a
me to stay home and take care of my kids. They even enjoy pitching i
easy enough to do while watching television."

Work like this is available locally in all parts of the country
you would like to try it, just follow the directions in Part One of
Earnings Directory. I guarantee you will not have to pay any fee.

## Companies That Pay You
## To Assemble Products

Some companies will pay you to sew or assemble products. They s
the materials, and you do the work. Then you send the completed prod
back to the company, and they pay you the agreed amount.

You do not have to go out and sell any products yourself. Step-
instructions tell you exactly what to do to get paid. Each company p
to hundreds of dollars a week, and you can work with as many compani
you want. Here are some examples:

Sew pot holders ? Make dolls ? Clean mohair
? Make hair bows ? Assemble stuffed animals
? Make dollhouse miniatures ? Sew baby bibs
? Assemble beaded jewelery ? Make placemats
? Sew duffle bags ? Assemble picture frames
? Sew baby bonnets ? Make wooden toys

These companies do not require any special experience or educat
They do not ask you your age, sex, or marital status. And it's fine
them wherever you live as long as it can be reached by the U.S. Post
service and UPS.

Remember: there is no selling involved. They send you the
materials; you send back the completed products and get paid. The mo
do, the more money you make. It's as simple as that.

## Pick What You Like To Do

From the many firms that offer opportunities to earn money at h
have selected over 200 for Part Two of my book. Each listing include
name and address and the type of opportunity offered.

My book does not list any multi-level marketing or anything tha requires special training. A few of the opportunities involve simple such as sewing or decorative painting. Most need no special skills a And no previous experience is ever required.

I update my directory regularly to bring you the latest listing companies with current openings. Plenty of extra listings are includ make up for the few that may expire before you apply.

You can be an indepedent home worker for as many companies as y like. Some people regularly receive checks from several companies. Y never have to meet any quota or do any more work than you want. It's entirely up to you.

I suggest you start with at least one or two companies that app you the most. Once you see that money coming in, you will probably w earn even more. It really can be fun.

### Solid No-Nonsense
### Money-Back Guarantee

The "Butterfield Home Earnings Directory" costs only $25.00 plu *for postage and handling. Just because the price is low, don't think* skimped on research. Companies charge as much as $39.95 for director with far fewer listings. I know because I buy them just to make sure don't miss any good openings.

You don't have to take my word for it. You be the judge. The sa isn't final until <u>you tell me</u> you are satisfied. When you get the book, look over the many wonderful opportunities. Write to the compa you like and see how quickly you can start to earn pay checks while at home watching television. Work when you feel like working. Rest w you want. It really can be that easy. I guarantee it.

If it's not exactly like I say, or if you are not satisfied for reason, just return the complete book within 60 days for a full refu your $25.00. *No questions asked! You do not have to prove that you s* any envelopes or tried anything. All you have to do is return the bo intact to get your refund. That's okay if it's dirty or bent from us main concern is that you are happy.

### Exciting Bonuses

To make doubly sure you are delighted with my book, I will incl three exciting bonuses that introduce you to my favorite programs. S programs from other companies could easily cost much more than the p my book for just one of them~ and it probably wouldn't be as good. E of these programs is the best of its kind.   There are none better at price. As one of my satisfied customers, you can get all three absol free!

**Bonus #1: Receive One Dollar For
Each Envelope You Stuff And Return**

Envelopes come to you already addressed and stamped. You pay no whatsoever, and you can do as many as you want each week when you follow these easy instructions. Just send in the special form you re in the book.

**Bonus #2: Get Paid Up
To $1,440.00 Each Week**

for mailing circulars. Receive checks directly from a reliable that has paid mailers over one million dollars. Commission checks up $1,440.00 are mailed every Friday. Use the special form in my book, can join this easy program absolutely free.

**Bonus #3: Make up to $7,600.00**

each time you mail two special letters. Nothing else makes mone fast. Mail one letter to business "A" and the second one to business Return the special form in my book, and I'll reveal my confidential for this clever strategy. I'll tell you what to write and who to sen letters to. It really does work, and it is completely legal and ethi Best of all, you can do it every month and keep right on collecting money.

Paychecks from many sources can soon be on their way to your ma The first step is to get my book and contact the companies you like Complete the handy order form and mail it so you can get started.

Sincerely,

*James Butterfield*

-----------cut here--------------------------------------------
ANP                                                    #B1009
c/o James Butterfield
P.O. Box 712102
Santee, CA 92072- 2102

( ) Yes, I want to get paid at home. Please rush "The Butter
    Home Earnings Directory" to me by first class mail under
    solid money-back guarantee. Enclosed is $28.00.* (Califo
    customers must add $2.00 for tax. $30.00 total)

*Checks may be made payable to ANP

Name_____

Address_____

City, State, Zip_____
                                    Internal Code [E35GR(16
-----------cut here----------------------------------------------

------------------- Headers -------------------------------
Return-Path:
Received: from  rly-yc05.mx.aol.com (rly-yc05.mail.aol.com [172.18.1
by air-yc04.mail.aol.com (v51.29) with SMTP; Mon, 23 Nov 1998 02:03:
Received: from tern.prod.itd.earthlink.net (tern.prod.itd.earthlink.
[207.217.120.121])
    by rly-yc05.mx.aol.com (8.8.8/8.8.5/AOL-4.0.0)
    with ESMTP id CAA13068;
    Mon, 23 Nov 1998 02:03:20 -0500 (EST)
From: Bfield29@mci2000.com
Received: from mail.anpsmtp.com (1Cust117.tnt18.lax3.da.uu.net
[208.254.129.117])
 by tern.prod.itd.earthlink.net (8.8.7/8.8.5) with SMTP id XAA25544;
 Sun, 22 Nov 1998 23:00:20 -0800 (PST)
Message-Id: <199811230700.XAA25544@tern.prod.itd.earthlink.net>
To:
Subject: Extra Income
Date: Sun, 22 Nov 1998 19:19:45

AO 120 (3/85)

| TO:<br><br>**Commissioner of Patents and Trademarks**<br>*Washington, D.C. 20231* | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT** |
|---|---|

In compliance with the Act of July 19, 1952 (66 Stat. 814; 35 U.S.C. 290) you are hereby advised
that a court action has been filed on the following patent(s) in the U.S. District Court:

| DOCKET NO.<br><br>98cv2284 S (LAB) | DATE FILED<br><br>12/18/98 | U.S. DISTRICT COURT<br><br>United States District Court, Southern District of California |
|---|---|---|
| PLAINTIFF<br><br>America Online Incorporated | | DEFENDANT<br><br>Michael Alexander Persaud |

| PATENT NO. | DATE OF PATENT | PATENTEE |
|---|---|---|
| 1 1,984,337 | July 2, 1996 | America Online Inc |
| 2 1,977,731 | June 4, 1996 | America Online Inc |
| 3 | | |
| 4 | | |
| 5 | | |

In the above-entitled case, the following patent(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | | |
|---|---|---|---|
| PATENT NO. | DATE OF PATENT | PATENTEE | |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above-entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

Copy 1 - Upon initiation of action, mail this copy to Commissioner   Copy 3 - Upon termination of action, mail this copy to Commissioner
Copy 2 - Upon filing document adding patent(s), mail this copy to Commissioner   Copy 4 - Case file copy

AO 120 (3/85)

| TO:<br><br>**Commissioner of Patents and Trademarks**<br>**Washington, D.C. 20231** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT** |
|---|---|

In compliance with the Act of July 19, 1952 (66 Stat. 814; 35 U.S.C. 290) you are hereby advised
that a court action has been filed on the following patent(s) in the U.S. District Court:

| DOCKET NO.<br><br>98cv2284 S (LAB) | DATE FILED<br><br>12/18/98 | U.S. DISTRICT COURT<br><br>United States District Court, Southern District of California |
|---|---|---|
| PLAINTIFF<br><br>America Online Incorporated | | DEFENDANT<br><br>Michael Alexander Persaud |

| | PATENT NO. | DATE OF PATENT | PATENTEE |
|---|---|---|---|
| 1 | 1,984,337 | July 2, 1996 | America Online Inc |
| 2 | 1,977,731 | June 4, 1996 | America Online Inc |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above-entitled case, the following patent(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment     ☐ Answer     ☐ Cross Bill     ☐ Other Pleading | | |
|---|---|---|---|
| **PATENT NO.** | **DATE OF PATENT** | **PATENTEE** | |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above-entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

Copy 1 - Upon initiation of action, mail this copy to Commissioner   Copy 3 - Upon termination of action, mail this copy to Commissioner
Copy 2 - Upon filing document adding patent(s), mail this copy to Commissioner   Copy 4 - Case file copy

AO 120 (3/85)

| TO:<br><br>**Commissioner of Patents and Trademarks**<br>**Washington, D.C. 20231** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT** |
|---|---|

In compliance with the Act of July 19, 1952 (66 Stat. 814; 35 U.S.C. 290) you are hereby advised
that a court action has been filed on the following patent(s) in the U.S. District Court:

| DOCKET NO.<br>98cv2284 S (LAB) | DATE FILED<br>12/18/98 | U.S. DISTRICT COURT<br>United States District Court, Southern District of California |
|---|---|---|
| PLAINTIFF<br><br>America Online Incorporated | | DEFENDANT<br><br>Michael Alexander Persaud |

| PATENT NO. | DATE OF PATENT | PATENTEE |
|---|---|---|
| 1 1,984,337 | July 2, 1996 | America Online Inc |
| 2 1,977,731 | June 4, 1996 | America Online Inc |
| 3 | | |
| 4 | | |
| 5 | | |

In the above-entitled case, the following patent(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment   ☐ Answer   ☐ Cross Bill   ☐ Other Pleading | |
|---|---|---|
| PATENT NO. | DATE OF PATENT | PATENTEE |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above-entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

Copy 1 - Upon initiation of action, mail this copy to Commissioner   Copy 3 - Upon termination of action, mail this copy to Commissioner
Copy 2 - Upon filing document adding patent(s), mail this copy to Commissioner   Copy 4 - Case file copy

JS 44
(Rev. 11/95)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

America Online Incorporated

State of Delaware

### DEFENDANTS

Michael Alexander Persaud (a/k/a James Butterfield, Henry Summers, Brian Crawford) d/b/a Advanced Network Promotions

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Commonwealth
**(EXCEPT IN U.S. PLAINTIFF CASES)** of Virginia

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT San Diego County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Andrew J. Berman, Esq. (SBN 146200)
STEINHART & FALCONER LLP
333 Market Street, 32nd Floor
San Francisco, CA  94105-2150
(415)  777-3999

ATTORNEYS (IF KNOWN)

'98 CV 2288 S      LAB

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation |
| Appeal to District Judge from ☐ 7 Magistrate Judgment | |

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 330 Federal Employers' Liability | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☒ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) Complaint for Violation of the Computer Fraud Act; Violation of the Washington Unsolicited Commercial Electronic Mail Act; Trespass to Chattels; Conversion; Civil Conspiracy; and Unjust Enrichment     IS:1155

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $ According to proof

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____   DOCKET NUMBER _____

| | |
|---|---|
| DATE  12.17.98 | SIGNATURE OF ATTORNEY OF RECORD   Andrew J. Berman |

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IPP _____   JUDGE _____   MAG. JUDGE _____

#04469

FD-JS44

JS 44 Reverse
(Rev. 11/95)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 Civil Cover Sheet and the information contained herein neither replace nor supplement the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. (a) **Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section ("see attachment".)

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdiction be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States Plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States Defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal Question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of Citizenship. (4) This refers to suits under 28 U.S.C. 1332,where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; (federal questionactions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Origin.** Place an " X " in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C. Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

V. **Nature of Suit.** Place an " X " in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII. **Requested in Complaint** Class Action. Place an " X " in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS-44 is used to reference relating pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge's name for such cases.

**Date and Attorney Signature.**